1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7

PHU K. VUONG and MOSAIC REAL
ESTATE INVESTMENT, LLC,

Case No.  24-cv-03510-AMO

8

Appellants,

9

v.

**ORDER AFFIRMING JUDGMENT IN
BANKRUPTCY ADVERSARY
PROCEEDING**

10
11

JACQUELINE LOPEZ-FLORES and
SAUL ROBERTO FLORES,

12

Appellees.

13
14

Appellants Phu K. Vuong and Mosaic Real Estate Investment, LLC appeal the judgment of

15

the bankruptcy court in an adversary proceeding.  Appellees Jacqueline Lopez-Flores and Saul

16

Roberto Flores have answered and argue the judgment should be affirmed.  The Court finds the

17

matter to be appropriate for disposition without oral argument.  *See* Fed. R. Bankr. P. 8019;

18

Scheduling Order, Dkt. No. 2, at 1.  Having carefully considered the parties' papers and the

19

arguments made therein, as well as the relevant legal authority, the Court hereby **AFFIRMS** the

20

bankruptcy court judgment for the following reasons.

21

**I.    BACKGROUND**

22

Appellee Lopez-Flores is the debtor in bankruptcy case No. 18-52014 and spouse of

23

Appellee and non-debtor Flores.  Excerpts of Record, Vol. 1 at 16-17.[1]  Appellants Vuong and

24

Mosaic appeal certain rulings of the bankruptcy court in adversary proceeding number 19-05020

25

("Adversary Proceeding"), in which Vuong and Mosaic were Plaintiffs and Lopez-Flores and

26

Flores were Defendants.  Below, the Court provides an overview of the pertinent facts and

27
28

[1] Further citations to the appendix will use the volume-ER-page format pursuant to Circuit Rule 30-1.6.

United States District Court
Northern District of California

proceedings in the underlying bankruptcy action.

### A.    Factual Background

#### 1.    The Parties and Related Entities

In 2009, Vuong began investing in the real estate market and made real estate investments through Mosaic, a limited liability company.  1 ER 18.  After taking interest in real estate due to Flores's work as a developer, Lopez-Flores earned her real estate license as a sales agent around 2007.  *Id*; 4 ER 577.  Lopez-Flores and Flores are involved in various entities engaged in real estate ownership, leasing, and development (the "Related Entities").  1 ER 19.  The Related Entities are as follows.

Ground Zero Construction ("Ground Zero") – "the center of the constellation of companies" Lopez-Flores and Flores operate – is a construction company involved in commercial and residential real property development.  *Id.*  When it was created, Flores was a responsible managing employee, and in 2013, James McClenahan was its sole owner.  *Id.*; 3 ER 413.  In 2014 to 2015, the ownership was restructured, and Ali Abiani took 40% of the shares while McClenahan took 60%.  1 ER 19.  By 2017, Flores had acquired 20% of the shares and McClenahan and Abiani each had 40%.  Ground Zero was the general contractor for the construction of Blaze, Inc. ("Blaze"), 95 Hamilton, LLC ("95 Hamilton"), and Iron Springs.  1 ER 21.

Eagle Sales and Development, LLC is a company Lopez-Flores created after receiving her real estate license.  *Id.*  She holds a 100% interest in that entity.  *Id.*; 4 ER 566.

95 Hamilton is a company created to coordinate investment in the development of an office building at 95 East Hamilton Avenue in Campbell, California.  1 ER 21.  It was one of Ground Zero's development projects and the only project that had a construction loan.  1 ER 20; 4 ER 676.

Iron Springs was formed to develop a single-family residence on Iron Springs Road in Los Gatos, California.  1 ER 20.  This project relied on investment capital and had no construction loan.  *Id.*

Uno Group Capital Holdings, LLC ("UGCH") was an investment vehicle for multiple parties and acquired capital for different build-out projects.  *Id.*  Its purpose was to provide

McClenahan with an opportunity to take ownerships of the different projects for which he provided capital in the event the companies were not able to pay back the money that Lopez-Flores and Flores borrowed from him. *Id.* While Lopez-Flores initially owned 100% of UGCH, McClenahan took 64% in 2017, and Lopez-Flores's ownership was reduced to 36%. *Id.* UGCH had a direct ownership interest in 95 Hamilton, Iron Springs, and Uno Group Food and Beverage, LLC ("UGFB"). *Id.*

UGFB was created in 2012 and is owned by multiple individuals and entities, including UGCH and Vuong, among others. *Id.* By December 21, 2015, UGCH held 92% ownership of UGFB, and Vuong held a 2% ownership interest. *Id.*; 18 ER 3975.

Blaze was the named tenant on a space lease at Westfield Mall, sometimes called Valley Fair Mall, and was developing what Lopez-Flores and Flores called the Popolo-Sky Lounge. 1 ER 21. Lopez-Flores was Blaze's president. *Id.* UGFB is Blaze's sole shareholder, and because UGFB did not have a bank account, investments for UGFB were made out to Blaze. *Id.* UGFB hired the entities Popolo Valley Fair and Popolo Management to administer and operate the Popolo-Sky Lounge. *Id.*

### 2. Blaze Litigation

In 2010, Blaze entered into a lease agreement with Valley Fair Mall, and Lopez-Flores was a personal guarantor. *Id.* Blaze agreed to make leasehold improvements, as the rented space was not equipped for Popolo-Sky Lounge, which would be financed by investors. *Id.* Later, Valley Fair Mall decided it did not want a restaurant in the Blaze space, terminated the lease, and brought an unlawful detainer action against Blaze, which was unsuccessful. *Id.*; 6 ER 1173. In March 2015, Valley Fair Mall refused to accept rent payments from Blaze. 1 ER 21. On May 1, 2015, Blaze and Lopez-Flores filed a complaint against Valley Fair Mall in Superior Court seeking compensatory damages of approximately $11.6 million ("Blaze Litigation"). 1 ER 21-22. The Superior Court ordered the parties to mediation, and in August 2015, the parties signed a memorandum of understanding in which Valley Fair Mall exercised its right to remove Blaze from the lease in exchange for paying Blaze the cost of its completed leasehold improvements. 1 ER 22; 3 ER 399. Blaze estimated it needed approximately $7 million to pay off all debt incurred to

United States District Court
Northern District of California

fund the leasehold improvements, liabilities, and investors.  1 ER 22.  Ultimately, Valley Fair Mall settled with Blaze for $3.7 million.  3 ER 401.  On February 8, 2021, the bankruptcy court approved a compromise authorizing Lopez-Flores's bankruptcy estate to receive $1.2 million from Valley Fair Mall.  1 ER 22.

### 3.     Minnesota Property

In November 2013, Mosaic purchased a residential investment property at 496 Minnesota Avenue in San Jose, California ("Minnesota Property").  1 ER 33.  Vuong intended to renovate and sell the property for a profit.  1 ER 34.  Ground Zero was renovating a house across the street, and Vuong was interested in hiring Ground Zero to renovate the Minnesota Property.  *Id.*  Vuong entered into a Development Service Contract with Flores individually on December 3, 2013, as well as a Home Improvement Contract with Ground Zero for the Minnesota Property on December 10, 2013.  *Id.*; 6 ER 1038.  The Home Improvement Contract required Vuong to make progress payments to Ground Zero as it renovated the Minnesota Property.  1 ER 34.  In September 2014, Ground Zero requested a payment in advance for its work, and Vuong agreed to make an advance payment of $93,720 through Mosaic, but demanded a secured interest in Abiani's residence at 370 Grandpark Circle in San Jose, California, to ensure the work would be completed.  *Id.*  Vuong made the payment on September 30, 2014, and Abiani signed a Deed of Trust and Assignment of Rents naming Vuong as the beneficiary and that document was recorded by the Santa Clara County Recorder on November 24, 2014.  *Id.*; 6 ER 1043.  Vuong agreed to release the Deed of Trust once Ground Zero completed the work on the Minnesota Property.  1 ER 34.

In December 2014, a Ground Zero employee told Vuong that the employee's paycheck was dishonored, and because Vuong did not want anyone to have a "bad Christmas," Vuong paid the employee himself.  *Id.*; 6 ER 1054.  Vuong then noticed that the work on the Minnesota Property ceased.  1 ER 34.  Ground Zero and Flores ran out of money to complete the Minnesota Property project because the funds Vuong advanced were used to pay for labor and materials needed for Popolo-Sky Lounge.  1 ER 35.  Flores told Vuong that if he wanted Ground Zero to complete the Minnesota Property renovations, he would need to invest in the Popolo-Sky Lounge,

United States District Court
Northern District of California

which Vuong agreed to do. *Id.* Ground Zero subsequently restarted construction on the Minnesota Property. *Id.* On January 9, 2015, Ground Zero gave Vuong a letter described as Schedule Completion for the Minnesota Property. *Id.* The letter listed additional renovations that would be made to the property by the end of January 2015. *Id.* Before Ground Zero finished its renovations, Vuong signed a real estate listing agreement with Lopez-Flores through Eagle Sales and Development, which called for the listing and sale of the Minnesota Property. *Id.* Vuong did so because Flores offered $15,000 of free upgrades in exchange. *Id.*

On July 14, 2015, Mosaic sold the Minnesota Property to the Bottarini Family Trust (the "Bottarinis") for $1,398,000. *Id.*; 6 ER 1058. The Bottarinis were aware that Ground Zero had not completed the work that was expected per the January 9, 2015 letter, and waived the final inspection because they believed Ground Zero would complete the work. *Id.* Several months following the sale, a conflict arose between the Bottarinis and Ground Zero and Flores regarding the Minnesota Property renovations. *Id.* The Bottarinis decided they did not want Flores to complete the work, and they hired another company to inspect the property, which identified multiple construction defects that it attributed to Ground Zero's work. 1 ER 36. The Bottarinis sued Mosaic and Ground Zero, and the parties mediated the dispute. *Id.* Flores and Ground Zero decided not to settle because Ground Zero wanted to fix the defects, but Vuong and Mosaic settled with the Bottarinis. *Id.* Through Mosaic, Vuong agreed to pay the Bottarinis $37,000 and incurred $36,104 in attorney's fees. *Id.*; 6 ER 1068. On June 15, 2018, Vuong and Mosaic filed a civil action against Flores, Ground Zero, and Abiani seeking damages and judicial foreclosure against the 370 Grandpark Circle Property. 1 ER 36.

### 4. UGFB/Blaze

On February 2, 2015, Vuong gave Flores a check payable to Blaze for $100,000, which stated "5% ownership for Popolo." *Id.*; 18 ER 3983. In addition, Vuong convinced his friend Hwa Su to invest $125,000 in Popolo. 1 ER 36. Vuong and Su were given ownership interests in UGFB. 1 ER 37.

### 5. 95 Hamilton

In September 2014, Flores asked Vuong to invest $250,000 into a project at 95 Hamilton,

stating the money would be used for a down payment on the property, and Vuong did so. *Id.*; 5 ER 891. In exchange, Mosaic received a 20% ownership interest in 95 Hamilton. *Id.* From 2016 to 2019, Vuong requested updates on the progress of the project, and Flores told Vuong each time that the project was still under development. 1 ER 38. Vuong eventually discovered that the money he had investment was used as a "development fee," and Vuong testified that he would not have invested in 95 Hamilton had he known his money would be used for that purpose. *Id.*; 6 ER 1092.

### 6.    Iron Springs

Lopez-Flores and Flores asked Vuong, and he agreed, to invest $150,000 to help them build their "dream house" on undeveloped land called Iron Springs. 1 ER 38; 6 ER 1104. Lopez-Flores and Flores gave Vuong a binder with a document called Operating Agreement of Iron Springs Development, LLC, which resembled the Operating Agreement of 95 Hamilton and UGFB. 1 ER 38. On August 14, 2015, Vuong invested in Iron Springs using funds from Mosaic. *Id.*; 5 ER 885.

### 7.    Secured Loans

In addition to providing Lopez-Flores and Flores with investment capital as described above, Vuong also provided them with two personal loans secured by Lopez-Flores's personal residence. 1 ER 40. On September 30, 2014, Vuong sent Flores $75,000 from his IRA account. *Id.*; 3 ER 403. Flores signed a promissory note agreeing to repay, and the loan carried an interest rate of 8% and was payable on January 6, 2015. 1 ER 40. Vuong claimed he loaned Flores the money to help him complete a church project in Fremont, but Flores claimed those funds were not earmarked for the church project. *Id.* Flores advanced the funds to Blaze and deposited the funds in Ground Zero's bank account. *Id.* Flores did not repay that loan. *Id.* Vuong granted him an extension, with a new maturity date of July 1, 2015. On July 18, 2015, the loan was extended again, with a new maturity date of December 1, 2015. As of the date of trial in the bankruptcy court, Flores had not repaid the loan. *Id.*

Vuong loaned more money to Flores on October 29, 2015. *Id.* Through Mosaic, Vuong lent Flores $10,000, and Flores signed a promissory note promising to repay that sum. *Id.* That

loan, too, was secured by the personal residence and carried an 8% interest rate. *Id.* It was payable by November 29, 2015. *Id.* Vuong lent this money to Flores to pay the attorney helping to prosecute the Blaze Litigation. *Id.*

### B.    Procedural History

#### 1.    Bankruptcy Proceedings

Lopez-Flores filed a voluntary Chapter 11 bankruptcy petition on August 8, 2016, which was dismissed on March 20, 2018. *Id.*; 10 ER 2211-2212.  On September 4, 2018, Lopez-Flores filed the bankruptcy case giving rise to this appeal, which was filed originally as a voluntary Chapter 11 and subsequently converted to Chapter 7.  1 ER 40; 13 ER 2958.  Flores filed two voluntary Chapter 11 bankruptcy petitions prior to Lopez-Flores's, both of which were dismissed.[2] 1 ER 40.  In her ongoing bankruptcy case, Lopez-Flores filed several sets of bankruptcy schedules and related documents which the bankruptcy court described as "evidenc[ing] a pattern of omitted facts and restatements or corrections of previously disclosed facts." *Id.*  While she consistently disclosed her personal residence, "many other assets and liabilities were omitted or misstated," including that she did not disclose her interest in 95 Hamilton or Iron Springs in her initial schedules, and she understated the amount of the first lien on her personal residence by $400,000. *Id.*  Moreover, she also omitted seven secured creditors, holding claims totaling $862,518.44, from her initial schedules. *Id.*  Her initial Statement of Financial Affairs ("SOFA") filed with her bankruptcy schedules stated that she was not a party to any lawsuit or court action within one year of filing for bankruptcy. *Id.*; 10 ER 2141.  She amended her SOFA two months later to disclose the Blaze Litigation.  1 ER 40.  Most amendments Lopez-Flores made to her schedules and SOFA occurred only after meetings of creditors pursuant to § 341(a) during which she was questioned, or after status conferences at which her counsel was made aware of the non-disclosed assets and debts by other parties to the case and litigation.[3] *Id.*

---

[2] The first was filed on May 19, 2015, but was dismissed on January 28, 2016.  The second was filed on February 15, 2016 and was dismissed on April 29, 2016.  1 ER 22.  Flores has no active bankruptcy case.

[3] "Within a reasonable time after the order for relief in a case under this title, the United States

### 2.    Adversary Proceeding

On December 24, 2019, Vuong and Mosaic commenced the Adversary Proceeding against Lopez-Flores and Flores.  On March 24, 2021, Vuong and Mosaic filed an amended complaint, containing six claims for relief including non-dischargeability claims, objections to Lopez-Flores's discharge along with Flores's community discharge, and request for treble damages under the California Penal Code.  On December 14, 2021, the bankruptcy court entered an order approving a stipulation between all parties to consolidate three claim objections – Claims 7, 10, and 11 – with the Adversary Proceeding.  A four-day trial took place beginning on September 20, 2023.

### a.    Order After Trial

The bankruptcy court issued its Order After Trial on April 3, 2024.  1 ER 16-62.  Therein, the bankruptcy court granted two of Vuong and Mosaic's non-dischargeability claims.  1 ER 61-62.  First, it denied Lopez-Flores's discharge pursuant to 11 U.S.C. § 727(a)(2) because she "concealed significant interests in the Blaze Litigation and some of the Related Entities and had the intent to defraud her creditors."[4]  1 ER 27.  It also denied discharge pursuant to § 727(a)(4)(A) on the basis that Lopez-Flores made multiple false oaths regarding her personal residence and her interest in the Related Entities in her bankruptcy schedules and SOFAs.[5]  1 ER 30.

---

trustee shall convene and preside at a meeting of creditors."  11 U.S.C. § 341(a).

[4] Section 727(a)(2) provides that a debtor should be granted discharge unless

> the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—(A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition.

[5] Section 727(a)(4)(A) provides a debtor should be granted discharge unless they

> knowingly and fraudulently . . . made a false oath or account; presented or used a false claim; gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs.

United States District Court
Northern District of California

1    Vuong and Mosaic also argued Lopez-Flores's discharge should be denied pursuant to

2    § 727(a)(7) because Lopez-Flores concealed property and made false oaths in her prior bankruptcy

3    case, which was dismissed.  1 ER 31.  Under § 727(a)(7),

4        the court shall grant the debtor a discharge, unless the debtor has
         committed any act specified in paragraph (2), (3), (4), (5), or (6) of
5        this subsection, on or within one year before the date of the filing of
         the petition, or during the case, in connection with another case,
6        under this title or under the Bankruptcy Act, concerning an insider.

7    The bankruptcy court, noting that "[a] Chapter 7 debtor cannot be their own insider in another

8    case," and thus, "the false oaths of a Chapter 7 debtor in their previous bankruptcy case cannot

9    serve as a ground under § 727(a)(7) for denying discharge in debtor's subsequent case," held that

10       Plaintiffs cannot rely on [Lopez-Flores's] false statements in her
         Prior Bankruptcy Case as the basis for a § 727(a)(7) claim in this
11       case.  Also, there is no evidence showing that any of the Related
         Entities that [Lopez-Flores] could be classified as an insider for have
12       filed bankruptcy petitions.  The § 727(a)(7) claim is denied.

13   *Id.*  Vuong and Mosaic had also brought a claim under 11 U.S.C. § 523(a), which provides that

14   discharge under certain sections, including § 727, does not discharge an individual debtor from

15   certain forms of debt.  11 U.S.C. § 523(a).  Specifically, they brought a claim under § 523(a)(4),

16   which exempts from discharge debts "for fraud or defalcation while acting in a fiduciary capacity,

17   embezzlement, or larceny," and for conversion under § 523(a)(6), which exempts from discharge

18   debts "for willful and malicious injury by the debtor to another entity or to the property of another

19   entity."  However, the issue of whether a debt is non-dischargeable under § 523(a) becomes moot

20   if the court denies the debtor's discharge under § 727(a) because there is no discharge from which

21   to except any debt.  *See* 11 U.S.C. § 727.  Accordingly, because the bankruptcy court denied

22   Lopez-Flores's discharge, it found Vuong and Mosaic's § 523(a) claims were moot.  1 ER 32-33.

23       The bankruptcy court next considered Vuong and Mosaic's Proofs of Claim 7, 10, and 11.

24   1 ER 33.  A proof of claim "is a written statement setting forth a creditor's claim," Fed. R. Bankr.

25   P. 3001(a), which, when properly filed, "constitutes prima facie evidence of the validity and

26   amount of the claim," Fed. R. Bankr. P. 3001(f).  Once a creditor properly files a proof of claim,

27   the burden shifts to the objecting party to present evidence to overcome the prima facie case.  *See*

28   *In re Garvida*, 347 B.R. 697, 706 (B.A.P. 9th Cir. 2016).  If the objector comes forward with

United States District Court
Northern District of California

evidence or "facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves, then the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence."  *Lundell v. Anchor Constr. Specs., Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000).  Under 11 U.S.C. § 502(a), a proof of claim "is deemed allowed, unless a party in interest . . . objects."  If an objection is made, the bankruptcy court, "after notice and a hearing, shall determine the amount of such claim . . . as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that . . . such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured."  11 U.S.C. § 502(b)(1).  The bankruptcy court described its task as follows:

> It is no simple matter to determine the nature of Vuong and Mosaic's claimed interests in this bankruptcy case, and whether they hold claims against [Lopez-Flores] and [Flores] as individuals.  To understand whether Vuong and Mosaic have valid claims one must examine the convoluted, murky record the parties to this dispute created when Vuong and Mosaic paid money to Saul and invested in the Related Entities.  The facts at trial showed that Vuong and Mosaic repeatedly advanced money to Saul and certain Related Entities to fund acquisition, construction, and other activities.  These advances were poorly and unconventionally documented, making assessment of their exact nature difficult.

1 ER 33.

Ultimately, the bankruptcy court partially denied Claim 7 and denied Claims 10 and 11.  Claim 7 is based on two promissory notes secured by two distinct deeds of trust against Lopez-Flores's personal residence and seeks $138,828.63.  1 ER 43.  Flores objected, arguing the accrued interest rate is usurious, and the bankruptcy court partially denied the claim on that basis.  *Id.*  Claims 10 and 11 were filed based on multiple investments Vuong made in the Related Entities, and sought $698,104 between both claims.  1 ER 48-49.  The bankruptcy court denied these claims, finding Lopez-Flores and Flores could not be held personally liable for the money Vuong and Mosaic advanced to the Related Entities.  *Id.*  In reaching its conclusions, the bankruptcy court made several findings regarding the credibility of witnesses.  *See* 1 ER 39-40.  Specifically, the bankruptcy court discredited Vuong and Mosaic's witnesses, Timothy Gillihan and Vanessa Hill, and found more useful Lopez-Flores and Flores's expert, Jolene Fraser.  *Id.*  On April 5, 2024, the

bankruptcy court entered judgment.  1 ER 12-13.

### b.   Additional Orders

On October 2, 2023, Vuong and Mosaic filed a "Limited Objection to Defendants' Exhibits LLLL-9 and LLLL-12 and Request for Reconsideration of the Unqualified Admission of Exhibits LLLL-2, LLLL-3, LLLL-5, LLLL-6, LLLL-7, and LLLL-14 Together with Motion to Strike Related Testimony of Saul Flores."  The exhibits and testimony that were the subject of Vuong and Mosaic's filing were offered at trial.  Lopez-Flores and Flores responded on October 4, 2023, and the bankruptcy court sustained in part and overruled in part Vuong and Mosaic's objections and motion to strike.  1 ER 81-82.

On April 15, 2024, Vuong and Mosaic filed a Motion for Reconsideration of Judgment and Claims.  1 ER 3.  On May 7, 2024, Lopez-Flores and Flores responded, and Vuong and Mosaic's reply followed on May 14, 2024.  1 ER 3-4.  A hearing was held on May 21, 2024, and on May 27, 2024, the bankruptcy court issued an order denying the motion.  1 ER 2, 4.

On April 22, 2024, Vuong and Mosaic filed a motion for leave to amend their complaint to conform to proof, seeking to add a common law fraud claim to their amended complaint.  1 ER 68. Lopez-Flores and Flores opposed, a hearing was held on May 21, 2024, and the bankruptcy court denied the motion on May 27, 2024.  1 ER 69.

On June 12, 2024, Vuong and Mosaic filed a notice of appeal, commencing the instant action.  Dkt. No. 1.

## II.   STANDARD OF REVIEW

District courts have jurisdiction to hear appeals from "final judgments, orders, and decrees" of the bankruptcy courts.  28 U.S.C. § 158(a)(1); *see also* Fed. R. Bankr. P. 8005.  A district court reviews a bankruptcy court's conclusions of law de novo and findings of fact for clear error.  *See In re Mortg. Store, Inc.*, 773 F.3d 990, 994 (9th Cir. 2014) (citing *In re Lazar*, 83 F.3d 306, 308 (9th Cir. 1996)).  "A bankruptcy court's factual findings are not clearly erroneous unless they are illogical, implausible or without support in the record."  *Ramon Palm Lane, Inc. v. Altman* (*In re Desert Springs Fin., LLC*), No. CC-16-1374-KuFL, 2017 WL 1434403 at *5, (9th Cir. BAP Apr. 20, 2017) (citing *Ezra v. Seror (In re Ezra)*, 537 B.R. 924, 929 (9th Cir. BAP

United States District Court
Northern District of California

1    2015)).  Disallowance of a claim is a legal determination reviewed de novo.  *Margaret B.*

2    *McGimsey Trust v. USA Capital Diversified Trust Deed Fund, LLC*, 377 B.R. 608, 617 (9th Cir.

3    BAP 2007).

4        Any evidentiary rulings are reviewed for an abuse of discretion.  *Sigma Micro Corp. v.*

5    *Healthcentral.com (In re Healthcentral.com)*, 504 F.3d 775, 783 (9th Cir. 2007).  A bankruptcy

6    court's denial of a motion for reconsideration is reviewed for an abuse of discretion.  *Arrow*

7    *Elecs., Inc. v. Justus*, 218 F.3d 1070, 1073 (9th Cir. 2000); *Sewell v. MGF Funding, Inc.*, 345 B.R.

8    174, 178 (9th Cir. BAP 2007).  A court "necessarily abuses its discretion when it bases

9    its decision on an erroneous legal standard or on clearly erroneous findings of fact."  *Farris v.*

10   *Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (citing *Flexible Lifeline Sys., Inc. v. Precision Lift,*

11   *Inc.*, 654 F.3d 989, 994 (9th Cir. 2011)).

## III.    DISCUSSION

13       Vuong and Mosaic appeal the bankruptcy court's partial disallowance of Claim 7 and its

14   disallowance of Claims 10 and 11.  As for Claim 7, they challenge the bankruptcy court's finding

15   that the interest on the loans at issue was usurious and the bankruptcy court's cancellation of the

16   interest.  Vuong and Mosaic's principal challenge as to Claims 10 and 11 is that the bankruptcy

17   court wrongly declined to apply an alter ego theory of liability.  First, Vuong and Mosaic argue the

18   bankruptcy court erred in finding they failed to establish primary liability of the Related Entities.

19   Next, Vuong and Mosaic contend the bankruptcy court erred in determining they were required to

20   prove an underlying state law claim and argue their claims under 11 U.S.C. §§ 523(a)(4) and

21   (a)(6) and Cal. Pen. Code § 496(c) sufficed.  Further, they appeal the bankruptcy court's denial of

22   their motion to reconsider the bankruptcy court's decision that they failed to plead an underlying

23   fraud claim and denial of their motion for leave to amend to conform to proof.  Next, Vuong and

24   Mosaic challenge the bankruptcy court's finding that they failed to establish the state law

25   requirements for alter ego liability, arguing the bankruptcy court erred in crediting Lopez-Flores's

26   witnesses more than theirs and denying reconsideration of the admission of certain exhibits and

27   their motion to strike certain of Flores's testimony.  Finally, Vuong and Mosaic appeal the

28   bankruptcy court's denial of their request in Claim 11 for expenses incurred in settling the

United States District Court
Northern District of California

1    Minnesota Property Litigation.  The Court considers each below.

2    **A.    Claim 7**

3    Proof of Claim 7 is based on two promissory notes secured by two distinct deeds of trust

4    against Lopez-Flores's personal residence.  Vuong filed the proof of claim on July 10, 2019, in the

5    amount of $138,828.63.  1 ER 43.  While Lopez-Flores does not contest the validity of Claim 7,

6    Flores filed an objection on July 28, 2023, contending that only $93,066.67 of the requested

7    amount should be allowed because the accrued interest of $45,761.96 – based on a 12% default

8    interest rate per annum – is usurious.  1 ER 43-44.  The bankruptcy court found both loans were

9    usurious on their face and ordered the usual remedy, cancellation of the interest.  1 ER 47 (citing

10   *Korchemny v. Piterman*, 68 Cal.App.5th 1032, 1043 (2021)).  Accordingly, the claim for the first

11   loan was only allowed in the amount of $83,000 and the claim for the second loan was only

12   allowed in the amount of $10,066.67 for a total allowable claim of $93,066.67.  *Id.*

13   Although listed in their statement of issues presented, *see* Op. Br. at 12, Vuong and Mosaic

14   do not argue the issue in their opening brief.  "Generally, an issue is waived when the appellant

15   does not specifically and distinctly argue the issue in his or her opening brief."  *Wang v. Chinese*

16   *Daily News, Inc.*, 737 F.3d 538 (9th Cir. 2013) (quoting *United States v. Brooks*, 610 F.3d 1186,

17   1202 (9th Cir. 2010)); *see also U. S. for Use & Benefit of Greenhalgh v. F. D. Rich Co.*, 520 F.2d

18   886, 890 (9th Cir. 1975) ("Failure to argue an issue presented for review is a waiver of the issue

19   on appeal.") (citation omitted).  Because Vuong and Mosaic's failure to address means the issue is

20   waived, the Court **AFFIRMS** the bankruptcy court's partial denial of Claim 7.

21   **B.    Claims 10 and 11**

22   Vuong and Mosaic filed Proof of Claim 10 in the amount of $475,000 based on multiple

23   investments that Vuong made in the Related Entities, including: (1) $250,000 for 95 Hamilton;

24   (2) $100,000 for UGFB; (3) $65,000 for UGFB; and (4) $60,000 for UGFB.[6]  Proof of Claim 11

25   was in the amount of $223,104 based on (1) $150,000 Vuong invested in Iron Springs using a

26

27   [6] Both Proofs of Claim were filed on December 4, 2019.  Claim 10 originally sought $125,000 for
     the investment made in UGFB.  However, in his post-trial brief, Vuong admitted the check made
28   to UGFB was for $100,000, not $125,000, and agreed to reduce Claim 10 by $25,000.  1 ER 48.

United States District Court
Northern District of California

check from Mosaic and (2) $73,104 Vuong paid via Mosaic to settle the Minnesota Property

litigation. 1 ER 48-49. Flores objected to both claims on the basis that Vuong and Mosaic were

not Lopez-Flores's creditors, but rather the creditors of the Related Entities. 1 ER 49. Flores

argued that he and Lopez-Flores were legally and factually separate from the Related Entities,

which they did not use in bad faith; assets and money were not comingled to benefit them; and the

Related Entities were not used to commit fraud. 1 ER 49. Flores's objections shifted the burden

to Vuong and Mosaic to establish claims' validity by a preponderance of the evidence. *Id.* (citing

*Lundell*, 223 F.3d at 1039).

The bankruptcy court evaluated Claims 10 and 11 together, noting "they are largely

duplicative," with the exception of Claim 11's assertion of money due arising out of the

Minnesota Property Litigation, which is discussed separately below. 1 ER 48. In evaluating these

two claims, the bankruptcy court considered the "difficult question" of whether Lopez-Flores and

Flores could be held personally liable for money Vuong and Mosaic advanced to the Related

Entities such that the claims should be allowed as against their bankruptcy estates. *Id.* Vuong and

Mosaic contend Lopez-Flores and Flores are personally liable for the claimed money because they

were married, had a unity of interest and ownership with each Related Entity, transferred money

and property between themselves and the Related Entities, and used the corporate status of the

Related Entities in bad faith as a shell to conceal transactions and to avoid and transfer liability. 1

ER 49. They contend the bankruptcy court made multiple errors related to the applicability of the

alter ego theory of liability in reaching its conclusion that the claims should be disallowed. Op.

Br. at 32. The Court examines each in turn.

### 1.    Alter Ego

#### a.    Primary Liability

Appellants' first arguments center on the bankruptcy court's determination that they failed

to establish the Related Entities' primary liability. 1 ER 52. As an initial matter, the bankruptcy

court found Vuong and Mosaic did not qualify as creditors. A creditor is an "entity that has a

claim against the debtor that arose at the time of or before the order for relief concerning the

debtor." 11 U.S.C. § 101(10)(A). A "claim" is a "right to payment, whether or not such right is

14

1  reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed,

2  undisputed, legal, equitable, secured, or unsecured . . . ."  11 U.S.C. § 101(5)(A).

3         The bankruptcy court determined Vuong and Mosaic are owners or members of the

4  Related Entities, which are all California limited liability companies.  Under California law, as

5  members of the limited liability companies, Vuong and Mosaic were deemed to have assented to

6  the operating agreements of the entities.  Cal. Corp. Code § 17701.11(b) ("A person that becomes

7  a member of the limited liability company is deemed to assent to the operating agreement.").  The

8  operating agreements for all three LLCs stated as follows:

9             3.05 Limitations on Withdrawals of Capital Contribution.
              No Member has the right to demand the return of, or withdraw, any
10            or all of that Member's Capital Contribution before the dissolution
              and winding up of the Company. No Member is required to
11            contribute or to lend any money or property to the Company to
              enable the Company the return of any Member's Capital
12            Contributions. No Member shall receive property or any part of that
              Member's Capital Contribution until all liabilities of the Company,
13            except liabilities to Members on account of their Capital
              Contributions, have been paid unless the Board determines that
14            adequate property will remain to pay the Company's liabilities after
              payment of some or all of that Member's Capital Contribution.
15

16  1 ER 50-51.  The bankruptcy court determined that this section "show[ed] that Vuong and Mosaic

17  have no right to payment for the money they invested in UGFB, Iron Springs, and 95 Hamilton

18  because the evidence does not show that those LLCs have been dissolved."  1 ER 51.  The

19  bankruptcy court further determined that none of the investments qualified as loans because the

20  operating agreements for all three LLCs stated as follows:

21            2.22 Loans by Members to the Company. No Member shall be
              obligated to lend money to the Company. No Member may lend
22            money to the Company without the written approval of the Board.
              Any loan by a Member to the Company shall be entered on the
23            books of the Company as a loan to the Company and not as a
              Capital Contribution, shall bear interest as such a rate as may be
24            agreed upon by the lending Member and the Board, and shall be
              evidenced by a promissory note duly executed by at least two
25            Members of the Board.

26  1 ER 51.  The investments were recorded as capital contributions, not loans, as none of them were

27  evidenced by promissory notes duly executed by at least two members of the board.  *Id.*

28         Because it found Vuong and Mosaic were investors, not creditors, in the Related Entities,

1    the bankruptcy court rejected Vuong and Mosaic's argument that they are creditors of Lopez-

2    Flores and Flores under an alter ego theory.  1 ER 51.  Vuong and Mosaic challenge the

3    bankruptcy court's determination on the basis that Lopez-Flores and Flores admitted that Vuong

4    and Mosaic were creditors of the Related Entities, and that admission was binding on the

5    bankruptcy court.  Op. Br. at 33.  With his objections to Proofs of Claim 10 and 11, Flores

6    submitted a declaration, which he prefaced by stating: "Claimant . . . is not a creditor of Debtor.

7    Claimant is a creditor of the various [Related Entities] identified on the Attachment [to]

8    Claimant's Proof of Claim."  13 ER 2749; 13 ER 2761.

9        Flores's statement does not establish that Vuong and Mosaic were creditors rather than

10   investors.  Although "[f]actual assertions in pleadings and pretrial orders, unless amended,

11   are considered judicial admissions conclusively binding on the party who made them," *Am. Title*

12   *Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988), "statements of law or legal argument

13   . . . fall outside the concept of judicial admissions," *Lam Research Corp. v. Schunk*

14   *Semiconductor*, 65 F. Supp. 3d 863, 870 (N.D. Cal. 2014).  Assuming a declaration submitted with

15   an objection to a proof of claim constitutes a "pleading," Flores's statement that Vuong and

16   Mosaic were creditors of the Related Entities, and not of Lopez-Flores, is not a judicial admission

17   of fact.  *See Eisen v. Day*, No. 21-CV-05349-VKD, 2023 WL 7284149, at *4 (N.D. Cal. Nov. 2,

18   2023) (finding an assertion that plaintiff was entitled to financial compensation for his ownership

19   interest was a legal conclusion, not a judicial admission of fact).  Vuong and Mosaic's challenge

20   to the bankruptcy court's conclusion that they were investors in the Related Entities rather than

21   their creditors therefore fails.

22                                    **b.    Substantive State Law Claim**

23       Vuong and Mosaic also challenge the bankruptcy court's finding that the alter ego theory

24   was procedurally improper because alter ego is not a substantive claim for which relief may be

25   granted, but rather it "furnishes a means for a complainant to reach a second corporation or

26   individual upon a cause of action that otherwise would have existed only against the first

27   corporation."  1 ER 52.  Because Vuong and Mosaic did not state an underlying claim against the

28   Related Entities, the bankruptcy court found the alter ego theory could not be sustained.  1 ER 52.

United States District Court
Northern District of California

1  It noted "[a] finding of fact of alter ego, standing alone, creates no cause of action.  It merely

2  furnishes a means for a complainant to reach a second corporation or individual upon a cause of

3  action that otherwise would have existed only against the first corporation."  1 ER 52.

4      Vuong and Mosaic argue this is error, as the alter ego doctrine can be invoked when there

5  is evidence that "adherence to the fiction of the separate existence of the corporation would

6  promote injustice," and there need not be an independent substantive claim.  Op. Br. at 35

7  (quoting *Misik v. D'Arco*, 197 Cal. App. 4th 1065, 1069 (2011).  "[T]here is no such thing as a

8  substantive alter ego claim . . . ."  *Ahcom, Ltd. v. Smeding*, 623 F.3d 1248, 1251 (9th Cir. 2010).

9  "A claim against a defendant, based on the alter ego theory, is not itself a claim for substantive

10  relief, e.g., breach of contract or to set aside a fraudulent conveyance, but rather, procedural . . . ."

11  *Id.* (citing *Hennessey's Tavern, Inc. v. Am. Air Filter Co.*, 204 Cal. App. 3d 1351 (1988)) (internal

12  quotation marks omitted).  Therefore, the bankruptcy court did not err in finding Vuong and

13  Mosaic's "effort is procedurally improper" because "[a]lter ego is not a substantive claim for

14  which relief may be granted," but "merely furnishes a means for a complainant to reach a second

15  corporation or individual upon a cause of action that otherwise would have existed only against

16  the first corporation."  1 ER 52.

17      Vuong and Mosaic argue that, even though they need not assert underlying substantive

18  claims to support their alter ego theory, they have nonetheless done so, and the bankruptcy court

19  improperly discredited those claims.  Op. Br. at 37.  The Court addresses each of their arguments

20  in turn.

21              **i.      Section 523(a)(4)**

22      Vuong and Mosaic argue that if the bankruptcy court had considered their claim for non-

23  dischargeability on the basis of fiduciary fraud under 11 U.S.C. § 523(a)(4), which became moot

24  upon the bankruptcy court's denial of discharge, the bankruptcy court could have imposed primary

25  liability on Lopez-Flores and Flores for money that Vuong and Mosaic gave to the Related

26  Entities.  Section 523(a)(4) provides that any debt "for fraud or defalcation while acting in a

27  fiduciary capacity, embezzlement, or larceny" is non-dischargeable.  A creditor must establish

28  three elements for non-dischargeability under § 523(a)(4): "(1) an express trust existed; (2) the

1   debt was caused by fraud or defalcation; and (3) the debtor acted as a fiduciary to the creditor at

2   the time the debt was created." *In re Niles*, 106 F.3d 1456, 1459 (9th Cir. 1997). Vuong and

3   Mosaic argued Lopez-Flores and Flores owed them a fiduciary duty because Lopez-Flores and

4   Flores were partners, officers, directors, members, and controlling shareholders and thus owe

5   duties of loyalty and care to the Related Entities and their members. Op. Br. at 38.

6       The bankruptcy court found Lopez-Flores and Flores "were not fiduciaries under

7   California law" because "[e]ach of the companies was governed by an Operating Agreement, and

8   the agreements arose under California corporate law." 1 ER 8. Under California law, a corporate

9   officer is not a fiduciary to the corporation or its shareholders for purposes of § 523(a)(4). *In re*

10  *Cantrell*, 329 F.3d 1119, 1126-27 (9th Cir. 2003). Therefore, the bankruptcy court did not err in

11  finding Vuong and Mosaic failed to establish that Lopez-Flores and Flores acted as fiduciaries at

12  the time the debt was incurred.

13              **ii.      California Penal Code § 496(c)**

14      Vuong and Mosaic also argue the bankruptcy court erred in dismissing their claim under

15  California Penal Code § 496(c), which also would qualify as a fraud claim supporting their alter

16  ego theory. California Penal Code § 496(c) imposes criminal liability on a person who receives

17  stolen property, and authorizes a party harmed by that conduct to seek treble damages and

18  attorney's fees. Liability under § 496 requires that property "has been obtained in a manner

19  constituting theft." *Bell v. Feibush*, 212 Cal. App. 4th 1041, 1048 (2013). The manner of theft

20  can include false pretenses, *id.*, which requires a showing that the defendant "made a false

21  pretense or representation with intent to defraud the owner of his property, and that the owner was

22  in fact defrauded. It is unnecessary to prove that the defendant benefitted personally from the

23  fraudulent acquisition." *People v. Ashley*, 42 Cal.2d 246, 259 (1954). To establish liability under

24  § 496(c), a plaintiff must prove "(1) the property was stolen; (2) the defendant knew the property

25  was stolen; and, (3) the defendant had possession of the stolen property." *Lacagnina v.*

26  *Comprehend Sys., Inc.*, 25 Cal. App. 5th 955, 970 (2018) (citation omitted). "To prove theft, a

27  plaintiff must establish criminal intent on the part of the defendant beyond 'mere proof of

28  nonperformance or actual falsity. This requirement prevents 'ordinary commercial defaults from

18

being transformed into a theft.' " *Siry Investment L.P. v. Farkhondehpour*, 13 Cal.5th 333 (2022) (alterations, citations omitted).

The bankruptcy court determined Vuong and Mosaic did not establish that Lopez-Flores and Flores committed theft. 1 ER 57. Vuong and Mosaic are not explicit about whether they challenge the bankruptcy court's factual findings or assert the bankruptcy court reached an improper legal conclusion, so the Court considers both. The bankruptcy court examined the record as to each of Vuong and Mosaic's investments and ultimately concluded Lopez-Flores and Flores were "not running a fictional or scam business," and that they "had multiple actual construction projects running at any time." 1 ER 57. This conclusion is supported by the record. The bankruptcy court acknowledged that at trial, "it was clear that [Appellees] on occasion used Ground Zero's funds to pay personal expenses." 1 ER 58. However, it determined that "the testimony at trial showed that the lions' share of money leaving Ground Zero was used for business and construction purposes." 1 ER 59. Because this conclusion is neither illogical nor implausible, *Ramon Palm Ln., Inc.*, 2017 WL 1434403, at *5, the bankruptcy court did not clearly err in these factual findings. *See In re Mortg. Store, Inc.*, 773 F.3d at 994.

Further, the Court determines the bankruptcy court did not commit legal error in finding neither Lopez-Flores nor Flores acted with criminal intent. 1 ER 59. Criminal intent exists where a defendant is responsible for "misrepresentations or unfulfilled promises" made with "careful planning and deliberation." *Siry Investment L.P.*, 13 Cal.5th at 361-62. The bankruptcy court's findings that Lopez-Flores and Flores were not running a scam business and used the majority of Ground Zero's money for business and construction purposes does not support a finding of criminal intent required for establishing the first element for liability under § 496(c), theft. And because the bankruptcy court determined there was no theft, it also did not commit legal error in declining to consider the second and third elements required to establish liability under § 496(c) and ultimately concluding the claim failed.

### iii.    Section 523(a)(6)

The bankruptcy court also considered Vuong and Mosaic's claim for conversion under 11 U.S.C. § 523(a)(6) for the money they provided UGFB, Iron Springs, and 95 Hamilton in

1    investment funds, which Vuong and Mosaic argue could serve as an underlying substantive claim

2    supporting alter ego liability.  1 ER 60-61.  Section 523(a)(6) excepts from discharge debts

3    resulting from "willful and malicious injury by the debtor to another entity or to the property of

4    another entity."  As with the § 523(a)(4) claim, the bankruptcy court found this claim was moot

5    because the court denied Lopez-Flores's discharge.  The bankruptcy court nonetheless considered

6    the merits of this claim to determine whether it could serve as a source of substantive relief to

7    which to attach alter ego liability.  1 ER 55.

8         Vuong and Mosaic challenge the bankruptcy court's conclusion that their conversion claim

9    failed.  Again, because they are not explicit about whether they challenge the bankruptcy court's

10   factual findings or assert the bankruptcy court reached an improper legal conclusion, the Court

11   considers both.  "Conversion is the wrongful exercise of dominion over the property of another."

12   *Lee v. Hanley*, 61 Cal. 4th 1225, 1240 (2015) (citation omitted).  "The elements of a conversion

13   claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's

14   conversion by a wrongful act or disposition of property rights; and (3) damages."  *Id.* at 1240.

15   "Money can be the subject of an action for conversion if a specific sum capable of identification is

16   involved."  *Avidor v. Sutter's Place, Inc.*, 212 Cal. App. 4th 1439, 1452 (2013) (citation omitted).

17   The bankruptcy court found that Vuong and Mosaic obtained ownership interests in exchange for

18   their investments.  This conclusion was not clear error, as it is supported by record evidence[7] and

19   is therefore not "illogical, implausible or without support in the record."  *Ramon Palm Lane, Inc.*,

20   2017 WL 1434403, at *5.  Further, because Vuong and Mosaic retain their investments in the

21   Related Entities, the bankruptcy court correctly determined the money was not converted and

22   therefore the § 523(a)(6) claim failed.  1 ER 60-61.

23                    **iv.    Motion for Reconsideration**

24        Vuong and Mosaic moved for reconsideration of the bankruptcy court's order finding that

25   they had not asserted an underlying fraud claim against Lopez-Flores and Flores.  Op. Br. at 35.

26

27   ───────────────
     [7] *See* 18 ER 3989 (showing Vuong received a 10% ownership in UGFB in exchange for
28   $225,000); 21 ER 4864 (showing Mosaic received a 20% ownership in 95 Hamilton in exchange
     for $250,000).

United States District Court
Northern District of California

1    Vuong and Mosaic argue the court erred in denying the motion.  *Id.*  Reviewing for abuse of

2    discretion, *Arrow Elecs., Inc.* 218 F.3d at 1073, the Court affirms the bankruptcy court's

3    determination.

4         To determine whether the bankruptcy court abused its discretion, courts employ a two-part

5    inquiry.  *In re First Yorkshire Holdings, Inc.*, 470 B.R. 864, 868 (9th Cir. BAP 2012).  First,

6    courts "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply

7    to the relief requested."  *United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009).

8    Second, courts determine whether the bankruptcy court's application of that standard, or the

9    court's factual findings, were illogical, implausible, or "without support in inferences that may be

10   drawn from facts in the record."  *Id.* at 1262 (citation and internal quotation marks omitted); *see*

11   *also McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (in reviewing decision on motion

12   for reconsideration based on purported clear error by trial court, reviewing court "do[es] not

13   review de novo the legal basis for the [alleged error], as [it] would if this were an appeal from the

14   order itself. . . . Rather, [it] ask[s] whether the [alleged error] involved a clear error of law").  Error

15   at either step constitutes an abuse of discretion.  *See Hinkson*, 585 F.3d. at 1261-63.

16        The bankruptcy court applied the correct standard by considering the "four basic grounds

17   by which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest

18   errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present

19   newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent

20   manifest injustice; or (4) if the amendment is justified by an intervening change in controlling

21   law."  1 ER 5 (citing *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011)).  And its

22   application of those factors was supported by the record.  *Id.* at 1262.  Vuong and Mosaic argue

23   the bankruptcy court improperly faulted them for not specifically pleading each element of an

24   underlying fraud claim, where they alleged fraud in the inducement in the first amended complaint

25   and in the joint pretrial case statement and fiduciary fraud in the joint pretrial case statement.  Op.

26   Br. at 35-36.  The bankruptcy court recognized that Appellants mentioned the word "fraud" in the

27   joint pretrial case statement, but rejected it as insufficient to plead fraud.  1 ER 7.  In no pleading

28   did Appellants brief a fraud claim.  *Id.*  The bankruptcy court's conclusion that Appellants had not

1   briefed a fraud claim is supported by the record and is not illogical or implausible.  *McDowell*, 197

2   F.3d at 1255.  Nor is the bankruptcy court's finding that Vuong and Mosaic failed to show

3   manifest injustice.

4                    **v.    Denial of Leave to Amend to Conform to Proof**

5        After trial, Vuong and Mosaic moved for leave to file a second amended complaint to

6   conform to proof and add a seventh claim for relief for "alter ego liability, common law fraud"

7   pursuant to Federal Rule of Civil Procedure 15(b)(2).  2 ER 178.  Appellants argue the bankruptcy

8   court erred in denying the motion because Appellees would not have been prejudiced by it and

9   because of the liberal policy favoring amendment of pleadings at any time.  Op. Br. at 41.

10       Courts reviewing a bankruptcy court's ruling on a Rule 15(b) motion review do so abuse of

11  discretion.  *Galindo v. Stoody Co.*, 793 F.2d 1502, 1512 (9th Cir. 1986); *In re Kaypro*, 218 F.3d

12  1070, 1073 (9th Cir. 2000).  Here, the bankruptcy court applied the correct legal rule – Federal

13  Rule of Civil Procedure 15(b) – which governs amendments during and after trial, provides that

14           [w]hen an issue not raised by the pleadings is tried by the parties'
15           express or implied consent, it must be treated in all respects as if
             raised in the pleadings.  A party may move – at any time, even after
16           judgment – to amend the pleadings to conform them to the evidence
             and to raise an unpleaded issue.  But failure to amend does not affect
17           the result of the trial of that issue.

18       The bankruptcy court also properly applied the rule.  It first considered whether Appellees

19  had either actually or impliedly consented at trial to the issue Appellants sought to add to their

20  complaint through amendment.  1 ER 72.  Its finding that there was no consent is supported by the

21  record, which shows that there was no fraud claim in the amended complaint, in Appellants' trial

22  or post-trial briefs, or in the joint pre-trial conference statement.  *See* 1 ER 72-73.  The bankruptcy

23  court separately considered the *Foman v. Davis* factors, which allow a court to deny leave to

24  amend where there is "undue delay, bad faith or dilatory motive on the part of the movant,

25  repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

26  opposing party by virtue of allowance of the amendment, [or] futility of amendment."  371 U.S.

27  178, 182 (1962).  The bankruptcy court explicitly found that "[a]llowing an amendment to the

28  pleadings now would not serve [Appellees'] interests," and that continued litigation in this case

1    would "adversely affect[] Defendants," 1 ER 74-75.  "Prejudice is the 'touchstone of the inquiry

2    under Rule 15(a)." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

3    Accordingly, the Court concludes the bankruptcy court's denial of Appellants' motion for leave to

4    amend was not illogical, implausible, or "without support in inferences that may be drawn from

5    the facts in the record." *Hinkson*, 585 F.3d at 1262.

6                          **c.    Substantive Alter Ego Liability Requirements**

7              Next, Vuong and Mosaic challenge the bankruptcy court's finding that they had not

8    satisfied the California law requirements for alter ego liability.  The bankruptcy court found that,

9    on the record before it, Lopez-Flores and Flores's relationships with the Related Entities did not

10    meet the requirements for the application of alter ego liability, as there is no debt since Vuong and

11    Mosaic were investors, and each of the companies had a separate purpose, held meetings, and had

12    officers and directors.  1 ER 53.  Vuong and Mosaic argue that this was error, contending the

13    bankruptcy court ignored "overwhelming evidence" that Flores was the "architect" of a

14    "fraudulent investment scheme and dominated and controlled" Lopez-Flores, the Blaze Lawsuit,

15    and the Related Entities.  Op. Br. at 44-45.  Vuong and Mosaic point to the following evidence in

16    the record: The Related Entities are managed by boards of directors, on which at least one of the

17    Appellees is a member (9 ER 1904); Appellees control the appointment of other directors (3 ER

18    437); Lopez-Flores attended board meetings but always deferred to Flores (4 ER 588, 610); and

19    that other board members were always Abiani or McClenahan (4 ER 609-610).  Op. Br. at 45-46.

20              Under California law, the two requirements of alter ego liability are

21                        (1) that there be such unity of interest and ownership that the
                      separate personalities of the corporation and the individual no longer
22                        exist, and (2) that, if the acts are treated as those of the corporation
                      alone, an inequitable result will follow.  With respect to the second
23                        requirement, it is sufficient that it appear that recognition of the acts
                      as those of a corporation only will produce inequitable results.
24

25    *Associated Vendors, Inc. v. Oakland Meat Co.*, 201 Cal.App.2d 825, 837 (Ct. App. 1962).  Courts

26    consider the following factors when applying the alter ego doctrine:

27                        (1) commingling of funds and other assets, (2) the holding out by
                      one entity that it is liable for the debts of the other, (3) identical
28                        equitable ownership in the two entities, (4) use of the same offices

United States District Court
Northern District of California

and employees, (5) use of one entity as a mere shell or conduit for the affairs of the other, (6) inadequate capitalization, (7) disregard of corporate formalities, (8) lack of segregation of corporate records, and (9) identical directors and officers.

*Turman v. Superior Ct. of Orange Cnty.*, 17 Cal. App. 5th 969, 981 n.6 (2017) (citing *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (2000)).  "No one characteristic governs, but the courts must look at all the circumstances to determine whether the doctrine should be applied."  *Id.*  "The determination of whether requirements exist for disregarding the corporate entity are primarily for the trial court, and not questions of law."  *Santa Cruz Empacadora, S. de R.L. de C.V. v. R.B. Packing of California, Inc.*, No. 00-CV-1217B (RBB), 2005 WL 8173035, at *2 (S.D. Cal. Sept. 13, 2005) (citing *Arnold v. Browne*, 27 Cal. App. 3d 386, 394 (1972) (internal quotations omitted)); *see also Cal W. Env't Servs., Inc. v. eStrategy, Inc. et al. Additional Party Names: Brian Sexton, Laura Lake*, No. 215CV09667RGKAFM, 2017 WL 11631492, at *3 (C.D. Cal. Jan. 3, 2017) (citing *Leek v. Cooper*, 194 Cal. App. 4th 399, 417 (2011)) ("Under California law, alter-ego liability is quintessentially a question of fact.").

Reviewing for clear error, the Court affirms the bankruptcy court's finding that Vuong and Mosaic failed to satisfy the requirements of California's substantive law of alter ego.  The bankruptcy court found that the facts in the record did not establish that the Related Entities had primary liability for a debt and were so completely dominated by Appellees that its separate existence would only further an injustice.  1 ER 53.  On its review of the record, the bankruptcy court determined the Related Entities were sufficiently separate in purpose and management such that their separate existence from Appellees would not further an injustice.  *Id.*  This conclusion is neither illogical, implausible, or without support in the record, *Ramon Palm Lane, Inc.*, 2017 WL 1434403, at *5, and the Court therefore affirms.

### i.    Expert Testimony

Vuong and Mosaic also argue the bankruptcy court made various errors with regard to the weight given to experts' testimony in considering whether Vuong and Mosaic had satisfied the substantive law of alter ego, and its subsequent disallowance of Claims 10 and 11 on that basis.  Specifically, Vuong and Mosaic argue the bankruptcy court clearly erred in (1) "minimiz[ing] and/or ignor[ing] Timothy Gillhan's expert testimony and find[ing] a portion of that testimony

1    irrelevant," Op. Br. at 47, and (2) "accept[ing] the testimony of [Lopez-Flores and Flores]'s expert

2    (Jolene Fraser) instead of the testimony of [Vuong and Mosaic]'s expert (Vanessa Hill) and

3    Flores's estranged sister, Elizabeth Flores-Tellez," *id.* at 50.

4           Where a party points to no clear error in the bankruptcy court's credibility determinations,

5    the reviewing court must defer to the bankruptcy court's findings as to the witnesses.  *See*

6    *Centennial Bank v. Kane*, No. 23-CV-02944-WHO, 2024 WL 1342600, at *5 (N.D. Cal. Mar. 29,

7    2024) (deferring to bankruptcy court's finding that witness's testimony was honest and adequate

8    where opposing party did not identify any clear error).  Vuong and Mosaic have "an especially

9    difficult burden" here because of "the deference [reviewing courts] give the bankruptcy court's

10   opportunity to weigh the importance of witness testimony and judge the credibility of witnesses."

11   *In re GTI Cap. Holdings, L.L.C.*, No. BAP AZ-06-1096-PADS, 2007 WL 7532277, at *16 (B.A.P.

12   9th Cir. Mar. 29, 2007) (citing Fed. R. Bankr. P. 8013).  It "generally is not an abuse of discretion

13   for the trial court to give more credit to one expert's opinion than to another's."  *People v. Oneal*,

14   64 Cal. App. 5th 581, 593 (2021) (citing *People v. Venghiattis*, 185 Cal. App. 3d 326, 333 (1986)).

15          First, Vuong and Mosaic challenge the weight the bankruptcy court afforded Timothy

16   Gillihan.  In the Adversary Proceeding, Vuong and Mosaic presented a forensic accounting report,

17   supporting documents, and testimony by Gillihan, their financial expert.  14 ER 3118, 3163.  The

18   Gillihan report concluded that the Related Entities' financial records were unreliable, that the

19   universe of financial records was inconsistent and contradictory, and the documents were not

20   customary for the types of records a construction company would maintain and provide.  14 ER

21   3118, 3163.  For example, he testified that Lopez-Flores and Flores did not have a practice of

22   keeping labor timecards, contemporaneous financial records, or third-party documentation.  1 ER

23   39.  Gillihan also testified about Flores's efforts to substantiate claims that he and Lopez-Flores

24   made in the Blaze Litigation for money the spent improving the Popolo-Sky Lounge leasehold.

25   The bankruptcy court determined "none of those financial documents were at issue in this case,

26   and [found] that part of his testimony irrelevant."  1 ER 40.  Vuong and Mosaic identify no clear

27   error in the bankruptcy court's determination, so the Court defers to the bankruptcy court's

28   assessment of Gillihan's testimony.

United States District Court
Northern District of California

United States District Court
Northern District of California

1

Vuong and Mosaic further argue the bankruptcy court erred in accepting Appellees'

2   experts' testimony instead of that of Vuong and Mosaic's experts.  Op. Br. at 50.  Appellants

3   provided a forensic accounting report and testimony by their financial expert, Vanessa J. Hill, who

4   testified that Lopez-Flores and Flores diverted investment funds with the intent to steal from

5   Vuong and Mosaic.  1 ER 37.  Overall, Hill found the Related Entities' records to be unreliable,

6   felt the usage of cashier's checks did not appear to be in the normal course of business and made

7   the Related Entities' transactions less transparent, and concluded there was pervasive

8   commingling between Appellees and the Related Entities.  *Id.*  The bankruptcy court found her

9   testimony was not persuasive, noting that her "conclusions failed to address how the money, once

10  moved to Ground Zero's accounts, was spent."  *Id.*  Further, the court "recognize[d] that

11  Defendants' accounting practices did not fully comply with accepted accounting practices" but

12  "the failure to properly account for funds is not the same as theft of those funds."  *Id.*

13          The bankruptcy court found the testimony of Lopez-Flores and Flores's expert, Jolene

14  Fraser, "to be more useful."  1 ER 40.  Fraser, a forensic accountant, explained it was not

15  uncommon for funds to be transferred from the bank account of an underlying development

16  project (such as Blaze) to the bank account of the construction company managing the project

17  (such as Ground Zero) because costs were being incurred on a regular basis to keep the project

18  moving.  *Id.*  Vuong and Mosaic argue Fraser made a "critical mistake" in her report by failing to

19  recognize the significance of the Gillihan report, because the Hill report did not sufficiently

20  emphasize Hill's reliance on the Gillhan report.  Op. Br. at 52-53.  Fraser criticized the Hill

21  report's failure to rely on the "underlying information, supporting documentation, understand the

22  nature of the transfer," 4 ER 628, and Vuong and Mosaic argue that had Fraser read the Gillihan

23  report "she would have known the underlying information and supporting documentation was

24  either non-existent, unreliable, highly suspect and/or not prepared contemporaneously."  Op. Br. at

25  53.  But Vuong and Mosaic point to no error suggesting it was an abuse of discretion for the

26  bankruptcy court to credit Fraser's testimony over Hill's.

27          Finally, Vuong and Mosaic argue the bankruptcy court abused its discretion in giving

28  Flores any credibility.  Op. Br. at 57.  Flores testified, and the bankruptcy court found that the

26

United States District Court
Northern District of California

1   record supported, that Ground Zero was a construction company and effectively managed all the

2   projects Lopez-Flores and Flores and their enterprises undertook.  1 ER 40.  "While the business

3   records were not a model of clarity," the court found "they were supported by evidence from third

4   parties which corroborated [Flores's] testimony."  *Id.*  "Overall, the court found that there was

5   substantial evidence to show that the investment of funds that flowed through Ground Zero paid

6   out funds to cover the expenses associated with these projects."  *Id.*  Vuong and Mosaic do not

7   argue that the bankruptcy court applied the incorrect legal standard in crediting Flores's testimony,

8   but rather that the "overwhelming weight of the evidence" mandated that he be given no

9   credibility.  Op. Br. at 57.  However, the bankruptcy court cited to record evidence supporting

10  Flores's testimony, thereby justifying the court's crediting of the testimony, and Vuong and

11  Mosaic fail to show this was illogical, implausible, or unsupported by the record.  *See Farris v.*

12  *Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012).

### ii.   Denial of Reconsideration of Admission of Exhibits LLLL-2, LLLL-3, LLLL-5, LLLL-6, LLLL-7, and LLLL-14 and to Strike Flores's Testimony

15          Vuong and Mosaic argue the bankruptcy court abused its discretion by denying

16  reconsideration of its admission of exhibits LLLL-2, LLLL-3, LLLL-5, LLLL-6, LLLL-7, and

17  LLLL-14 and denying the motion to strike Flores's testimony on those exhibits.  "A Bankruptcy

18  Court's ruling on a motion to strike is entrusted to its sound discretion and is reviewed under the

19  abuse of discretion standard."  *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1038 (9th Cir.

20  2003).  "Discretion is abused when the judicial action is 'arbitrary, fanciful or unreasonable' or

21  'where no reasonable [person] would take the view adopted by the trial court.' "  *Id.* (citing *U.S.*

22  *Cellular Inv. Co. of L.A., Inc. v. GTE Mobilnet, Inc.*, 281 F.3d 929, 934 (9th Cir. 2002)).

23          During trial, Flores testified, and Exhibits LLLL-9 and LLLL-12 were offered during his

24  direct testimony.  Exhibit LLLL-9 is a Ground Zero Construction Comerica Bank account

25  statement with certain items highlighted in yellow and with a handwritten dollar amount on the

26  first page.  Exhibit LLLL-12 is a series of Ground Zero checks drawn on a Ground Zero Bank of

27  the West account, again with certain items highlighted in yellow and with a handwritten dollar

28  amount on the first page.  Vuong and Mosaic objected to the exhibits at trial, and the bankruptcy

United States District Court
Northern District of California

court admitted the exhibits provisionally subject to Vuong and Mosaic's right to object on the ground that they had not been produced in discovery.  Upon their review, Vuong and Mosaic determined the exhibits had been produced in discovery, but they did not include the highlighting or handwritten dollar amount when produced.

On October 2, 2023, Vuong and Mosaic moved for reconsideration of the admission of exhibits LLLL-2, LLLL-3, LLLL-5, LLLL-6, LLLL-7, and LLLL-14, 3 ER 377, but because they failed to timely object during trial, the bankruptcy court found that Lopez-Flores and Flores would be prejudiced if the exhibits were excluded and that Appellants had an opportunity to timely object during trial and failed to do so.  Accordingly, the bankruptcy court found Vuong and Mosaic waived the admission of those exhibits, and had not shown their admission was prejudicial to any of their substantial rights, nor that they challenged the authenticity of the exhibits themselves.  The bankruptcy court thus denied the motion for reconsideration of the admission of those exhibits.  Vuong and Mosaic also moved to strike Flores's testimony with respect to all highlighted items and handwritten dollar amounts on all the exhibits at issue in its motion.  The bankruptcy court granted the motion with respect to exhibits LLLL-9 and LLLL-12, but denied it as to the remaining ones. 1 ER 81.  The bankruptcy court also rejected Vuong and Mosaic's argument that it should give no weight to the remaining exhibits, reiterating that they had the opportunity to object to them during trial and failed to do so.  1 ER 59.

Here, the bankruptcy court "listened to, considered, and rejected" Vuong and Mosaic's arguments, and consequently did not abuse its discretion.  *El Pollo Loco*, 316 F.3d at 1038.  The Court therefore **AFFIRMS** the bankruptcy court's denial of Vuong and Mosaic's motion for reconsideration of the admission of Exhibits LLLL-2, LLLL-3, LLLL-5, LLLL-6, LLLL-7, and LLLL-14 and to strike Flores's testimony.

### 2.    Settlement of Minnesota Property Litigation

Vuong and Mosaic also challenge the bankruptcy court's denial of Mosaic's request in Claim 11 for payment of $73,104 related to its settlement of the Minnesota Property Litigation. Specifically, Mosaic argued Lopez-Flores and Flores are liable for the damages it paid to settle litigation caused by Ground Zero's failure to properly construct the building.  *Id.*  The bankruptcy

court found the claim sounded in "alter ego" and "tort of another." *Id.* The bankruptcy court found the claim under an alter ego theory failed, as the alter ego theory is remedial and does not provide substantive relief for which Mosaic may show it has a right to an equitable remedy for breach of performance that gives rise to a right to payment. 1 ER 61.

It also found the tort of another doctrine did not apply because there was no finding of an underlying tort, a conclusion Vuong and Mosaic now challenge. "The tort of another doctrine holds that a person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred." *Mega RV Corp. v. HWH Corp.*, 225 Cal. App. 4th 1318, 1337 (2014). Because the doctrine applies to economic damages suffered because of an alleged tort, "nearly all of the cases which have applied the [tort of another] doctrine involve a clear violation of a traditional tort duty between the tortfeasor who is required to pay the attorney fees and the person seeking compensation for those fees." *Id.* at 1339 (internal quotation marks omitted). The bankruptcy court found there was no underlying tort, and therefore Vuong and Mosaic's tort of another theory necessarily failed. 1 ER 55. It found Mosaic did not establish that Lopez-Flores and Flores owed Mosaic a duty of care, that Lopez-Flores and Flores breached that duty, and that they were the but-for and proximate cause of Mosaic incurring those damages. *Id.* Appellants argue their tort-of-another theory was "squarely before the [bankruptcy court]" as it was briefed and was the subject of Appellees' motion in limine, so the bankruptcy court erred in finding Appellants did not plead an underlying tort. Op. Br. at 58.

Reviewing de novo, the Court concludes Appellants did not plead an underlying tort claim. Appellants' Claim 11 included a brief summary of an alter ego theory. 17 ER 3916. In the section of Appellants' trial brief discussing Lopez-Flores and Flores's liability as to the losses on the Minnesota Property, Appellants asserted that their theory of liability is "known as 'Tort of Another,' " and noted that it is the subject of Appellees' motion in limine, and they would discuss it in their opposition. 8 ER 1811-12. Appellants' first amended complaint listed its sixth claim for relief: "Non-dischargeability of debt under 11 U.S.C. § 523(a)(6) (Intentional Tort – Theft)." 13

29

ER 2821.  And the joint pre-trial conference statement states that "Plaintiffs incurred attorneys' fees as a result of Ground Zero's negligence in the form of damages, which are recoverable under the 'tort of another' doctrine."  9 ER 1924.  It is in the opposition to Lopez-Flores and Flores's motion in limine where the most discussion takes place regarding the tort of another theory, but Vuong and Mosaic's argument is limited to addressing Defendants' argument about whether a lawsuit is a required element of a tort-of-another claim.  7 ER 1321-22.  Nowhere in the record can the Court find testimony or argument that Vuong and Mosaic argued the elements of a tort to support a finding of a tort of another theory of liability.  Thus, the bankruptcy court did not commit legal error in denying the request in Claim 11 for payment related to the settlement of the Minnesota Property Litigation, and the Court therefore **AFFIRMS**.

## IV.    CONCLUSION

For the foregoing reasons, the judgment of the bankruptcy court is **AFFIRMED**.


**IT IS SO ORDERED.**

Dated: September 30, 2025

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

United States District Court
Northern District of California